## THE STATE OF CONNECTICUT *vs.* FREDERICK A. TYRRELL.

Third Judicial District, Bridgeport, October Term, 1923.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

This court does not take judicial notice of the orders of a board of health of a city.

An information alleging an offense—in this case a sale of milk within a city—contrary to an order of a city board of health, should set out the terms of the order or its substance, otherwise the information is demurrable, or open to attack by motion to quash.

To determine the correctness of the trial court's ruling upon such a demurrer, there is no occasion for a finding of facts, nor can such a finding, if made, be resorted to for the purpose of ascertaining what the order of the board of health was and then passing upon its validity.

Submitted on briefs October 23d—decided December 13th, 1923.

INFORMATION for vending milk in the City of Waterbury without a license issued by, and contrary to an order of, the board of public health of said city, brought to the City Court of Waterbury, *Larkin, J.*, which overruled a demurrer to the information and, upon the refusal of the accused to plead over, imposed a fine of $25 and costs, from which he appealed. *Error; judgment to be entered for the accused.*

*Charles G. Root*, for the appellant (the accused).

*Charles E. Hart, Jr.*, and *Charles S. O'Connor*, for the appellee (the State).

WHEELER, C. J. The information charges that the accused unlawfully vended milk in the City of Waterbury, without a license issued by the department of public health, contrary to an order of the board of

public health of said city. The information does not purport to give either the terms or the substance of the order of the board. This court cannot take judicial notice of the orders of the board of health of Waterbury. The order charged to have been violated should have been set out either in its terms or in their substance. An information which is not so framed will be held bad upon a proper motion to quash or demurrer. *State* v. *Cruickshank,* 71 Vt. 94, 42 Atl. 983; *State* v. *Soragan,* 40 Vt. 450; *Bray* v. *Damato,* 70 N. J. L. 583, 57 Atl. 394; *State* v. *Olinger,* 109 Iowa, 669, 671, 80 N. W. 1060; *Commonwealth* v. *Lagorio,* 141 Mass. 81, 6 N. E. 546; 1 Dillon on Municipal Corporations (5th Ed.) § 231.

In *State* v. *Stokes,* 91 Conn. 67, 98 Atl. 294, the information sets out, in accordance with our ordinary practice, the terms of the regulation of the board of health violated. Our rule requires an information based upon a penal statute to set forth the terms of the statute, or every fact necessary to bring the case within the statute. *Crandall* v. *State,* 10 Conn. 339.

So far as the information alleges, the board of health, under its order, may issue a license with or without a fee; it may issue it to one and deny it to another; in short, the issuance of the license rests in its uncontrolled discretion. There is no standard set up, no conditions named, no terms given to govern its action. The State may require vendors of milk to take out a license and "charge a license fee proportionate to the cost of supervising the business. . . . The justification for such interference is the preservation of the public health, safety or welfare." *State* v. *Porter,* 94 Conn. 639, 642, 110 Atl. 59.

In *State* v. *Conlon,* 65 Conn. 478, 486, 487, 33 Atl. 519, we state the conditions upon which the regulation of a nondangerous business must rest: "The legislature

has full power to regulate such a business, but its regulations must be governed by very different principles from those which may govern the regulations of a business in its nature dangerous to the public. In the one business no citizen has an absolute right to engage; in the other all citizens have the right and an equal right to engage. The difference is vital. What is the regulation prescribed by this Act? It is simply a prohibition of the business unless a license is obtained from the officers of the municipality where the business is to be conducted. If the terms on which such license should be granted were defined, a different question would be presented. . . . The conditions of the Act do not support a mandate to issue a license upon compliance with rules established by law; on the contrary, they clearly provide for the exercise of a discretion unrestrained by law."

Again, in *State* v. *Coleman,* 96 Conn. 190, 197, 113 Atl. 385, we reassert our law's position in antagonism to the giving of uncontrolled discretion to administrative officials: "The overwhelming weight of authorities in the State courts is that statutes and ordinances which purport to give to administrative officials an absolute and uncontrolled discretion to grant or refuse permission to do something which all citizens similarly situated have an equal right to do, are unconstitutional." See, also, *State* v. *Smith,* 67 Conn. 541, 550, 35 Atl. 506.

The trial court has made a finding setting up the order of the department of public health upon which the information was based. We have no right to incorporate this order in the information and then determine the correctness of the court's ruling on the demurrer. When the demurrer was overruled and the accused refused to plead over, the issue on appeal was made, and there was no occasion for a finding which is essential after a trial on the merits and a judgment from which

an appeal is taken. We appreciate that the parties desire a determination of the validity of this order, but the condition of the record forbids our making this determination, although an inspection of the order in the light of the decisions above quoted could permit of but one conclusion.

There is error, the judgment is reversed with direction to the City Court of Waterbury to sustain the demurrer to the information and render judgment for the accused.

In this opinion the other judges concurred.