## TOWN OF WALLINGFORD vs. LOVEL E. NEAL.

Third Judicial District, New Haven, June Term, 1928.

WHEELER, C. J., MALTBIE, HINMAN, BANKS and YEOMANS, Js.

Argued June 6th—decided July 16th, 1928.

*Walter P. Judson,* for the appellant (defendant).

*Oswin H. D. Fowler,* for the appellee (plaintiff).

WHEELER, C. J. The plaintiff sues to recover moneys paid by it under the provisions of §3402 of the General Statutes, as amended by Chapter 269, §20, of the Public Acts of 1925, for damage done by dogs.

The statute, so far as it relates to this action, provides: "When any person shall sustain damage by dogs to his sheep . . . he shall give information thereof to one of the selectmen of the town in which such damage was sustained, . . . and thereupon one of the selectmen of such town, with a person to be named by the person sustaining the damage, shall estimate the amount of such damage. . . . If the selectmen and the person named cannot agree upon the amount of damage, they shall choose some disinterested third person to assist in estimating such damage. The amount of damages estimated by any two of such three persons shall be paid by such town, and it may recover such amount, when paid, with the compensation of such appraisers, from the owners, keepers or harborers of such dogs if residents of such town."

On May 18th, 1927, eleven sheep belonging to Linus Hall were killed by dogs in his pasture in Wallingford, and on May 20th, seven other sheep were similarly killed. Hall gave notice of the killing to the first selectman, and on May 21st Hall and the first selectman mutually agreed upon the value of the sheep so killed at $12 per head, making the total for the eighteen sheep $216. Thereafter the plaintiff paid Hall the amount so agreed upon on June 28th, 1927.

The defendant seeks to correct the finding in three particulars. The first two requested corrections—to strike out, in paragraph twenty-nine, "others of which he had harbored upon his premises, without licensing them," and in paragraph thirty, "these two dogs were accustomed to sleep in defendant's barn"—should have been granted. They are, however, too immaterial to affect the result of the action. The other correction sought, to strike out: "Said two dogs found dead upon defendant's premises, were kept and harbored by the defendant, in the town of Wallingford, on and for a long time prior to May 21st, 1927, and were the dogs which, on May 18th, killed eleven sheep, and on May 20th killed seven sheep, the property of said Linus Hall." This finding as to the seven sheep is not, as we understand defendant's claim, attacked, nor could it be successfully. The real attack upon this paragraph is in including within it the eleven sheep. Whether the eleven were killed by the dogs which killed the seven sheep was not established by direct proof, but it was a fair inference to make upon this evidence.

The two attacks of dogs were made within a three days' interval. Evidence was offered which, if credited, clearly identified the dogs kept and harbored by the defendant as those which killed the seven sheep. These two dogs had been kept and harbored by the defendant for some time. They were part Airedale and semi-wild dogs. The most careful search failed to find in the locality any Airedale dogs similar to these two. On the morning after the killing of the seven sheep the defendant told the constable who was investigating this matter that he had heard Hall's sheep had been killed, and when asked where his dog was said he had none and had not seen any dogs such as the Airedale dogs. In consequence of information

received from neighbors a few hours later, Hall, the first selectman, and the constable, revisited defendant's farm and asked to see defendant's dog. He replied he only had one dog which he said was out in the barn. Searching the barn they found the dead body of a part Airedale dog, recently killed by having been brained with an ax and its throat cut. In a burlap bag hidden under a garden fence of defendant's premises was another part Airedale dog recently killed in the same manner. These were the dogs which killed the seven sheep. They had been killed after the constable had made inquiry of defendant. Hall had other sheep in this pasture after the seven were killed, but these were not molested by dogs.

Neal's explanation of his possession of the dogs and of this transaction was not credible. In the light of these facts, particularly Neal's guilty conduct, the trial court might fairly have drawn the inference that these two dogs were the same dogs which killed the eleven sheep. One other ground of appeal must be considered. It is the only serious question in the case.

The defendant claims that this statute only gives the plaintiff town a remedy over against the defendant when the estimate of the damages it paid to the owner of the sheep killed had been made in accordance with the terms of the statute. We do not find in this statute an express provision giving the plaintiff town a right of action where the estimate has been agreed upon by the selectman with a person named by the person sustaining the damage, but reading the statute in its entirety such a right of action is necessarily within its intendment.

The method of assessing the damages preceding that now in force under the statute before us was by the selectmen. The statute then had similar purposes to provide a method of compensation by the town to

the person who has sustained damage by dogs to his sheep, etc., and an action over by the town for the moneys so paid against the owner, keeper, or harborer of the dogs. In interpreting the former statute, we say in *Van Hoosear* v. *Wilton,* 62 Conn. 106, 25 Atl. 457: "The liability of the town to the plaintiff under the statute is a strictly limited and peculiar liability, and in order to recover against the town the plaintiff must bring himself strictly within the statutory provisions. . . . The right of the plaintiff against the town, and the duty of the town toward the plaintiff, are correlative and co-extensive, and come into existence at one and the same time." The question at issue was "whether or not the plaintiff is conclusively bound in this action by the estimate of damages made by the selectmen. . . . The plaintiff," we say, "voluntarily seeks to avail himself of the special and peculiar advantages given him by the statute. . . . The law does not bind him *in invitum* by the estimate of the selectmen. It simply says—'If you avail yourself of the statute you can recover no more than the amount of such estimate made in good faith.' If the plaintiff thus voluntarily takes the benefit of the statute, he must be held to have taken it with all its burdens and limitations also, and of such he ought not now to complain." The same construction must be accorded the present statute. In the former statute the estimate was made by the selectmen. In the present statute it is made by one of the selectmen with a person named by the person suffering the damage. The cause of action in behalf of the person suffering the damage in either case depends upon the estimate made. When the town has paid the amount of the estimate it may recover from the owners, keepers or harborers of the dogs doing such damage. Its recovery is based upon the estimate required to be made by the statute.

In *Scoville* v. *Columbia*, 86 Conn. 568, 570, 86 Atl. 85, the complaint alleged that the selectmen, having knowledge of the damage done by dogs, neglected and refused to estimate such damage. A nonsuit was granted upon the ground that the plaintiffs had not offered any evidence to show that any estimate or appraisal had been made or attempted to be made by calling in some third person, as required by the provisions of the statute of 1909. The terms of this statute so far as the requirements of the estimate are concerned are the same as in the present statute. We held: "After a disagreement the provisions of the statute in relation to obtaining an estimate or finding in this manner were conditions precedent to the plaintiff's right to commence an action, and these facts should have been alleged. In the absence of such averments no liability upon the part of the town appeared. . . . It was vital to the plaintiffs' case to show that they had made an effort to have their claim estimated as provided for in the arbitration clause of the statute. . . . To meet the conditions and to show a right of action under this statute, it should appear that the plaintiffs had done everything that could be done on their part to secure an estimate of the damages by choosing some third person and notifying the selectmen thereof."

This construction is equally binding in a case under the 1925 statute in force when this action was brought. These provisions of the statute are mandatory and cannot be dispensed with. Since the actions by the owner of the sheep and by the town were created by statute each must comply literally with its terms in order to recover under it. The payment by the town is based upon the estimate made in accordance with the statute; the recovery over by the town is the recovery of the amount so paid of the estimate so

made. . The complaint is based upon this statute and the town, aside from the statute, had no cause of action against the defendant. The agreement upon the damage done made by the selectman and Hall, instead of the securing by him of an estimate by the selectman and a person to be named by him, was a departure from a condition precedent to the maintenance of the statutory action. We have no concern with the wisdom of this statutory provision. Since it is clear and unambiguous, we are merely required to enforce it. We cannot hold that the agreement between the parties designated by the statute is the same as the estimate by the selectman and Hall. It may well be that the legislature devised this method as productive of a fairer result to the party who was responsible for the damage as well as to the party damaged. But whatever the legislative motive may be is beside the mark. We may not substitute another for the legislative method. The procedure in this respect is fully and clearly outlined in the statute, the construction of which has been conclusively determined in the cases from which we have quoted.

There is error, the judgment is reversed and the Court of Common Pleas directed to render its judgment in favor of the defendant to recover his costs.

In this opinion the other judges concurred.