STATE OF CONNECTICUT *v.* JULIA A. HUGHES

FILE No. CR 1-15862

STATE OF CONNECTICUT *v.* GEORGE S. HUGHES

FILE No. CR 1-15863

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued December 21, 1964—decided March 4, 1965

*Robert M. McAnerney,* with whom, on the brief, was *Peter M. Ryan,* both of Darien, for the appellants (defendants).

*Benjamin F. Ferris,* of Greenwich, for the appellee (state).

KOSICKI, J.  These cases were presented together and, although separate, identical records have been filed, the appeals from the judgments rendered have been combined at the instance of the parties.  The information originally filed in each case charged the defendant with the sale, delivery or giving of liquor to minors in violation of § 30-86 of the General Statutes.  A minor under our Liquor Control Act is a person under twenty-one years of age. § 30-1 (12). In response to a motion, a bill of particulars was filed, alleging that the crime in each case consisted of delivery and the giving of liquor to minors on the premises of a private home, and that, at the time the alleged crime was committed, neither accused was a permittee or the servant or agent of any permittee within the meaning of § 30-86.  To these informations and specifications the defendants demurred on the ground that the acts alleged did not constitute a crime under the provisions of

§ 30-86, "in that the alleged delivery or giving of liquor to minors took place in or about a private home." The demurrers were overruled and, upon being arraigned, the defendants stood mute. The court thereupon entered a finding of guilty and imposed sentence, and the defendants have appealed.

The procedure followed was with the complete knowledge and acquiescence of the defendants, who at all times were ably represented by counsel. In standing mute and allowing the findings of guilty and the judgments to enter against them, the defendants claim as authority, for the preservation of their right to present the questions of law raised by the demurrer, this single sentence, taken from the context of the opinion in *State* v. *Sul,* 146 Conn. 78, 83: "Upon the overruling of his demurrer, the defendant could have refused to plead over, let judgment enter, appealed from the judgment and raised the questions of law which he now presents." In the *Sul* case, which attacked the constitutional validity of the statute under which prosecution was brought, the defendant did plead not guilty upon the overruling of the demurrer and, after trial, was found guilty on the merits. The practice followed in the present case fully accords with our precedent where the bare issue involved is the constitutionality of the very statute under which the defendant is charged; *State* v. *Darazzo,* 97 Conn. 728, 731; or where the information is so defectively framed as to be held bad upon a motion to quash or demurrer. *State* v. *Tyrrell,* 100 Conn. 101, 102. In the situation before us, the validity of the statute was conceded and the only issue raised was one of its construction and its applicability to the few simple facts alleged in the information and the bill of particulars. Without our expressing ourselves on the adequacy of the information and its further specifications, it would seem that the case presented a factual situa-

tion which, unless admitted, made evidential support requisite; and we can find no authority for the proposition that, by standing mute on arraignment, the defendants have permitted the truth of the essential allegations, as charged, to stand admitted, in a manner comparable to their filing of pleas of nolo contendere. A plea of nolo contendere must, of course, be in writing and must be followed by a finding of guilty. Practice Book § 476. The presumption of innocence that shields every person accused of crime would appear to exclude the drawing of any inference of guilt from the silence of the accused on arraignment; and the allegations of facts in support of the information would still need to be proved, at least prima facie, by the state, before a finding of guilty could be made. See *State* v. *Nelson,* 139 Conn. 124, 127. We make the foregoing comment in order that it may be clear that no requirement of due process has been overlooked; and we have decided to treat the case as treated by the parties in the trial court by adopting the expressed intention of the defendants that all alleged facts and those fairly inferable therefrom may be taken as true so far as they relate to the questions of law raised by the demurrer. See *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 260.

The only assignment of error in each appeal is that the court erred in overruling the defendant's demurrer to the information as made more specific by the bill of particulars. The special ground of demurrer is that the delivery or giving of intoxicating liquors by the defendants to minors did not fall within the terms and intendment of § 30-86 because it took place on the premises of a private home. Section 30-86 reads as follows: "Sales to minors, intoxicated persons and drunkards. Any permittee who, by himself, his servant or agent, sells or delivers alcoholic liquor to any minor, or to any intox-

icated person, or to any habitual drunkard, knowing him to be such an habitual drunkard, or to any person after having received notice from the selectmen, as provided in section 30-83 or 30-84, not to sell or give such liquor to such person, and any person, except the parent or guardian of a minor, who delivers or gives any such liquors to such minor, except on the order of a practicing physician, shall be subject to the penalties of section 30-113."

The gravamen of the defendants' argument bears on the statutory construction to be given to the quoted section and may be stated concisely as follows: (1) The statute, read in its entirety, is ambiguous in that it is capable of being understood as being applicable to the serving of liquor to a minor either in a private home or as part of a commercial transaction; (2) the title of § 30-86, "Sales to minors, intoxicated persons and drunkards," can be fairly indicative of the meaning of the statute as having reference only to a gift or delivery involved in a commercial transaction; (3) the general designation "any person," used in the latter part of the section, as well as the words "such liquors" must, by the operation of the rule of ejusdem generis, be considered as being of the same class of persons, acts and things as those described in the first part of the section, and therefore such phrases are employed solely in connection with a commercial transaction; and (4), if it were held otherwise, said latter portion of § 30-86 would be the only part of the Liquor Control Act regulating noncommercial use of alcohol and thus would be inconsistent with the remaining 112 sections of the act, so that, obviously, if all sections are read and construed as being in pari materia, the questioned section can be said reasonably to apply only to a delivery of alcoholic liquor as part of a commercial transaction and not to a transfer of liquor in a private home.

In the long history of liquor regulation in this state,[1] which includes that of sale or service of intoxicating liquor to minors, it was not until 1913 that the predecessor of the portion of § 30-86 reading, "and any person, except the parent or guardian of a minor, who delivers or gives any such liquors to such minor, except on the order of a practicing physician, shall be [punished]," was passed. The full text of the act under review, appearing as Public Acts, 1913, chapter 10, is as follows: "An Act concerning the Delivery or Gift of Liquors to Minors. Be it enacted by the Senate and the House of Representatives in General Assembly convened: Every person, except the parent or guardian of a minor, who shall deliver or give any spirituous or intoxicating liquors to such minor, except on the order of a practicing physician, shall be subject to the penalties of section 2712 of the general statutes [1902 Revision]."

This was an original enactment, complete in itself, and definitive in expression and scope. It was nowhere described or referred to as an amendment to § 2696 of the Revision of 1902, which read as follows: "Sales to minors and others, and loitering, forbidden. Every licensed person, who by himself, his servant, or agent, shall sell or deliver spirituous and intoxicating liquor to any minor, either for his own use or the use of any other person, or to any intoxicated person, or to any husband, after having received notice from his wife not to sell or deliver such liquor to him, or to any wife, after having received notice from her husband not to sell or deliver such liquor to her, or to any habitual drunkard, knowing him to be such, or to any persons, after having received notice from the selectmen, as

[1] For summation of methods of control from colonial times to the end of the nineteenth century, reference is made to *Malmo's Appeal*, 72 Conn. 1, 6.

provided in § 2695, not to sell, exchange, or give such liquor to such persons, or who shall allow any minor to loiter on his premises where such liquors are kept for sale, shall be subject to the penalties of § 2712." Until the enactment of chapter 10 of the Public Acts of 1913, the proscription of sale or delivery of intoxicating liquor to minors was directed against persons licensed to conduct a liquor business, acting by themselves or through their servants or agents.

It is an axiom of statutory construction that where the language of a statute, taken at its ordinary and usually understood meaning, is plain, unequivocal and unambiguous, the enactment speaks for itself and there is no occasion to construe it. "Where the language is plain and unambiguous, as in this case, the intent of a statute is to be determined from its language. *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447 . . . . In such a case, the enactment speaks for itself and there is no occasion to construe it. *State ex rel. Cooley* v. *Kegley,* 143 Conn. 679, 683 . . . ; *Wilson* v. *West Haven,* 142 Conn. 646, 654 . . . . The words used in expressing the legislative intent are to be given their commonly approved meaning. General Statutes § 1-1; *Southern New England Telephone Co.* v. *Public Utilities Commission,* 144 Conn. 516, 522 . . . ; *Spellacy* v. *American Life Ins. Assn.,* 144 Conn. 346, 354 . . . . It must also be presumed that the General Assembly had a purpose for every sentence, clause or phrase in the statute. *McAdams* v. *Barbieri* [143 Conn. 405, 419]." *State* v. *Springer,* 149 Conn. 244, 248; see *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 344; *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682; *McAdams* v. *Barbieri,* supra, 415-16, 418-19; *General Tires, Inc.* v. *United Aircraft Corporation,* 143 Conn. 191, 195; *State ex rel. Cooley* v. *Kegley,* supra;

*Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331; *Bridgeport* v. *Stratford,* 142 Conn. 634, 641; *Bailey* v. *Mars,* 138 Conn. 593, 598; *Landry* v. *Personnel Appeal Board,* supra; *Old Colony Gardens, Inc.* v. *Cheney,* 136 Conn. 18, 20; *Jack* v. *Torrant,* 136 Conn. 414, 418; *Parsons* v. *Wethersfield,* 135 Conn. 24, 28; *Evans* v. *Administrator,* 135 Conn. 120, 124; *McManus* v. *Jarvis,* 128 Conn. 707, 711; *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 241; *Niedzwicki* v. *Pequonnock Foundry,* 133 Conn. 78, 82; *Colchester Savings Bank* v. *Brown,* 75 Conn. 69, 71; *McKay* v. *Fair Haven & W.R. Co.,* 75 Conn. 608, 610; *Swits* v. *Swits,* 81 Conn. 598, 599; *Miner* v. *McNamara,* 82 Conn. 578, 584; *Rawson* v. *State,* 19 Conn. 292, 299. "In the absence of anything in a statute to indicate the contrary, and we find nothing here, 'words and phrases shall be construed according to the commonly approved usage of the language . . .'. General Statutes § 1-1; *State* v. *Moran,* 99 Conn. 115, 118 . . . ; *Pierce* v. *Albanese,* 144 Conn. 241, 254 . . . ." *Baker* v. *Norwalk,* 152 Conn. 312, 315.

In the construction of a statute, we cannot create doubt where none exists. The meaning of a statute is not to be ascertained by a retrograde approach, invoking uncertainties and inventing ambiguities, in order to arrive at an ostensible legislative indecision. To a reasonable mind, no ambiguity or uncertainty appears in the wording of the act of 1913 and the successor to it contained in § 30-86; and the statute makes clear that henceforth the public policy enunciated by the legislature was in furtherance of and beyond the earlier limitations of § 2696 of the Revision of 1902. The legislature could hardly make plainer its intention that the new act was to apply to all gifts or deliveries of spirituous or intoxicating liquors to minors, except those made by parents or guardians or on the order of a practicing physi-

cian. Those were the sole exceptions; no others were within the letter or intendment of the statute. The law was manifestly directed at the eradication, or minimally at the discouragement, of alcoholic indulgence by minors who, lacking self-discipline, fortitude and discretion, and uninformed by their own observation and the experience gained by maturing years, were most likely to fall into habits of dissolute excess and vice, with grave injury to themselves, and resulting progressively in a sapping decadence in the moral sinews and the lofty aims of a resolute, determined and evolving society. Such objectives of legislative policy were within the powers of the General Assembly to enact, and once they were enacted it became the duty of the courts to enforce them. "It is a universally accepted rule of constitutional law that the legislative department in the use of its police power is the judge, within reasonable limits, of what the public welfare requires. The court's function in examining the constitutional aspect of police legislation is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection of the laws. *Schwartz* v. *Kelly,* 140 Conn. 176, 179 . . . ; *Carroll* v. *Schwartz,* 127 Conn. 126, 129 . . . . Courts cannot question the wisdom of police legislation and must accord to the legislature a liberal discretion, especially in matters involving potentialities generally recognized as dangerous. *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674 . . . ; *Beckanstin* v. *Liquor Control Commission,* 140 Conn. 185, 192 . . . ." *Pierce* v. *Albanese,* 144 Conn. 241, 249.

In the Revision of 1918, the act under review was, without change, made part of § 2795, the remainder

of which was formerly § 2696 of the Revision of 1902. Upon repeal of the eighteenth (prohibition) amendment, the part of § 30-86 which we are considering was enacted as § 1071c of the 1935 Cumulative Supplement without any material change in language from that of its precursor, § 2795 of the Revision of 1918. The interruption in liquor activity caused by prohibition poses no problem in the construction of statutes enacted after repeal, prompted by the twenty-first amendment to the federal constitution, so that such construction may accord with the intent and meaning expressed by the legislature in statutes containing the same or substantially similar language before the accomplishment of prohibition by chapter 291 of the Public Acts of 1921. See, for example, *Pierce* v. *Albanese,* supra, 246. Through subsequent revisions, including the last, the 1958 Revision, the text of the conjoined statutes, except for inconsequential changes in syntax, has remained the same. It is the defendants' contention that the placement of and title given to § 30-86 in the General Statutes reasonably require the construction that the delivery mentioned in the latter part of § 30-86 has reference only to a sale or delivery concomitant with a commercial transaction. In arriving at this postulate, the defendants have ignored two firmly established rules of statutory construction: (1) Revisers are presumed not to change the law; and (2) when a title is resorted to in order to help ascertain intent, it must be the title of the legislative enactment and not that given to it by statutory revisers. "Unless it clearly appears otherwise, revisers are presumed to have expressed in their revision the intent of existing statutes, though they may have altered the form of their statement. *Norwalk* v. *Daniele,* 143 Conn. 85, 87 . . . ; *In re Appeal of Dattilo,* 136 Conn. 488, 492 . . . . The language of the statute as revised or the legislative intent to

change the former statute must be clear before it can be pronounced that the statute was changed in respect to its construction and operation. *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 393, 401 . . . ." *Wilson* v. *Miller,* 144 Conn. 212, 216; *Castagnola* v. *Fatool,* 136 Conn. 462, 468; *Miller* v. *Phoenix State Bank & Trust Co.,* 138 Conn. 12, 16; *State* v. *DeGennaro,* 147 Conn. 296, 303; *State* v. *Fahy,* 149 Conn. 577, 581; *Ross* v. *Crofutt,* 84 Conn. 370, 376.

Where ambiguity or uncertainty exists in the interpretation of a statute, the terms of the title descriptive of the statute may be considered in determining the legislative intent; "but it cannot enlarge or confer power; *Hazzard* v. *Gallucci,* 89 Conn. 196, 200 . . . ; nor can it control the meaning of a statute when the legislative intent is clear from its text. *New York, N.H. & H.R. Co.* v. *Orange,* 91 Conn. 472, 479 . . . ." *State ex rel. Hartnett* v. *Zeller,* 135 Conn. 438, 442; *Baker* v. *Baningoso,* 134 Conn. 382, 387. "But 'titles are of little importance as compared with text as indicative of legislative intent.' *Root* v. *New Britain Gas Light Co.,* 91 Conn. 134, 140 . . . . The title cannot enlarge or restrict the meaning of a statute where the language of the text is plain and the intent is clearly expressed." *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 687. Moreover, in considering the title of a legislative act as an aid to resolving ambiguity and uncertainty in arriving at legislative intent, it is not the title contained in a compilation or revision that may be relied on as a guide but the title given to the enactment by the legislature. "The titles of legislation are often valuable aids to construction. *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 370 . . . . But they are by no means conclusive. *Mad River Co.* v. *Wolcott* [supra]. What is significant in this case is the title of the bill when it was acted upon by the legisla-

ture. . . . This title is the final, and therefore the controlling, one. . . . [The] appellation . . . given by the legislative commissioner in the preparation of the [cumulative] supplement... [Rev. 1949 § 3526] represents only his, and not the legislature's designation of the section." *Sullivan* v. *Town Council,* 143 Conn. 280, 287.

The defendant's argument consequently fails because both the title and the text of chapter 10 of Public Acts, 1913, and the text of the successor statute § 30-86 are plain, direct, clear and unambiguous and susceptible of only one construction, if, indeed, any need for statutory construction is necessary. We, therefore, hold that the gift or delivery of intoxicating liquors to minors, notwithstanding such act occurred within the confines of a private residence, is not exempt from the proscription of § 30-86. "It is a cardinal rule, of course, that statutes should be construed by the courts in a way to give them validity. But that does not permit a court to distort the words in order to wring out of them a desired interpretation. *Watrous* v. *Connelly,* 141 Conn. 257, 263 . . . ; *Lenox Realty Co.* v. *Hackett,* 122 Conn. 143, 150 . . . . The construction placed upon the statute must stand." *Pierce* v. *Albanese,* 144 Conn. 241, 247. "Interpretation must be interpretation of the Act, and not of some interpretation or attempted paraphrase of the Act, stated in view of the particular set of facts before the court . . . ." *Fiarenzo* v. *Richards & Co.,* 93 Conn. 581, 588.

The exemption of parents and guardians from the operation of § 30-86 cannot be said to be arbitrary, superficial or devoid of sound, practical reasons. Parents and those in loco parentis, through consanguinity or affinity, not only have a deep, immediate and personal interest in the welfare of their children and wards but, under law, may enforce correction

for the unruly conduct of their charges and compel obedience in all matters, whether of a legal, moral or familial nature. Their special duty, under the law, to keep their charges from falling into habits of vice is imposed on them by statute; and their failure to exercise this duty subjects them to criminal process. General Statutes § 53-254. This statute, to be sure, applies only in cases of minors under sixteen years of age. Another of our statutes, however, imposing liability for torts of minors on parents and guardians, has no such age limitation and subjects parents and guardians to civil liability, not exceeding $750, for wilful or malicious damage caused to person or property by unemancipated minors for whom they are responsible. § 52-572. Thus, parents and guardians of minors are charged with duties under § 30-86 for which complete strangers, other than permittees under the liquor law and their agents, well-meaning though they may be, are free of direct responsibility. Accordingly, the defendants' premise, if followed to its ultimate conclusion, finds no solace either in the legal definitions or the sociological implications of the law.

Because of the view we take of this case, it becomes unnecessary to consider in detail the remaining reasons advanced in the defendants' argument. All of them are predicated on the assumed interpretation of § 30-86, urged by the defendants, that the law does not prohibit an act of hospitality gratuitously bestowed by a host on a minor guest, in his own home, even though that act amounts to a gift or delivery of intoxicating liquor as forbidden by § 30-86. From its origin, as we have stated above, the section of the statute directly under review has had only one purpose and meaning. It was intended to place out of reach of minors, through the act of any intervening human agency, unless exempted by statute, any intoxicating liquors as defined by law.

It was not confined to such transactions as might be coincidental with a gift or delivery on or about permit premises or in conjunction with an act flowing from the conduct of a liquor business. Such acts in one form or another had been proscribed from early times, and in the judgment of the legislature the law then existing was, for the time being, considered adequate to cope with the forbidden evil of selling or delivering liquor to minors through the instrumentality of a licensed or permitted activity. *State* v. *Lougiotis,* 130 Conn. 372, 376; *Rose* v. *Liquor Control Commission,* 124 Conn. 689, 690; *State* v. *Koenig,* 120 Conn. 39, 44; *State* v. *Faro,* 118 Conn. 267, 270; *State* v. *Katz,* 122 Conn. 439, 441; *State* v. *Kinkead,* 57 Conn. 173, 180; *State* v. *Brown,* 51 Conn. 1, 4; *Barnes* v. *State,* 19 Conn. 397, 404; see also *Koval* v. *Liquor Control Commission,* 149 Conn. 63, 66; *State* v. *Lamperelli,* 141 Conn. 430, 436. The continuing concern of the legislature to restrict completely the delivery of liquor to minors by licensed persons is further manifested in the narrowing of the rule in *State* v. *McMahon,* 53 Conn. 407, 414, which held that sale or delivery of liquor to a minor for the use of his father was not in violation of the law, by the enactment of chapter 22 of the Public Acts of 1887, which prohibited such sale or delivery, whether for the minor's own use or that of his parent or of any other person. Rev. 1888, § 3092.

By the enactment of chapter 10 of the Public Acts of 1913, the legislature intended to say what it did say, and not to render superfluous, redundant or repetitious what it had made clear in terms of legislation already existing. " 'All statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be gathered from the language used, connected with the subject to the legislation, and so that the entire

language shall have effect, if it can, without defeating the obvious design and purpose of the law. And in doing this, the application of common sense to the language, is not to be excluded.' *Rawson* v. *State,* 19 Conn. 292, 299; *State* v. *Faro,* 118 Conn. 267, 272 . . . ." *Lutkevicz* v. *Brennan,* 128 Conn. 651, 653. In reading into the statute an exception which is neither expressed nor necessarily implied from the language used, the defendants urge a "sublety of discrimination" which it is not discernible that the legislature had at any time entertained. *Day* v. *Walsh,* 132 Conn. 5, 9.

In support of their position that, in other jurisdictions, penal statutes forbidding the sale, gift, or delivery of alcoholic liquors to minors have been held not to apply to the furnishing of liquor to minors while in the home as guests of the transferor, the defendants cite such cases as *People* v. *Bird,* 138 Mich. 31; *Austin* v. *State,* 22 Ind. App. 221; *Reynolds* v. *State,* 73 Ala. 3; *Albrecht* v. *People,* 78 Ill. 510; *Commonwealth* v. *Carey,* 151 Pa. 368; and *Commonwealth* v. *Dickerson,* 25 Ky. L. Rep. 1043. The trial court, in its memorandum of decision on the demurrers, and the prosecution, in its brief, had cited equally persuasive authority to the contrary, referring to such cases as *Commonwealth* v. *Davis,* 75 Ky. (12 Bush) 240; *People* v. *Neumann,* 85 Mich. 98; *State* v. *Sifford,* 51 N.M. 430. To these may be added *State* v. *Stock,* 169 Minn. 364, wherein it was held that the penalty of the statute cannot be escaped by showing that a gift of liquor to a minor was made in the spirit of hospitality or good fellowship.

While we accord due respect to the reasoning and interpretations placed by other courts on statutes of similar import in their respective jurisdictions, we must say in all candor that statutes of other

states and the construction which has been placed upon them can be of little help in construing our statute, unless such statutes are in substantially the same language as ours. *State* v. *Lanyon,* 83 Conn. 449, 451. We have traced the history of § 30-86 and examined the preexisting legislative purpose sought to be effectuated, the mischief or defect for which the law had not formerly provided, the remedy prescribed by the legislature, and the reason for the remedy. *Merchants Bank & Trust Co.* v. *Pettison,* 112 Conn. 652, 655. We conclude, therefore, that the action of the court in overruling the demurrers was correct.

While this conclusion is dispositive of the present case, we have not neglected to consider the defendants' ingenious argument that the construction we place on § 30-86 would render it violative of the first amendment to the federal constitution because it would necessarily follow that if the prohibition was applicable to every situation in which a person other than a parent or guardian delivered alcoholic liquor to a minor, then it would forbid the sacramental distribution of wine to minors as part of a religious service, thereby violating the constitutional guarantee of free exercise of religion. The argument is offered not as an attack on the constitutionality of the statute, for that question was not raised in the trial court, but only as an observation that statutes are to be construed in harmony with constitutional requirements since the legislature is presumed to have intended a valid and not an invalid act; and a literal reading of § 30-86 would render it unconstitutional and invalid.

The sacramental use of wine has been an integral part of the ceremonial ritual of many of our religious sects from early colonial times. In enacting the predecessor of § 30-86, it is to be presumed that

the legislature was aware of such religious rites and customs and there was no need to state as an exception to the literal operation of the law activities such as these, and other wholesome social customs mentioned by the defendants, in order to exclude them from the law's proscription. Nor, may it be said, is the law powerless to exert its force in situations where, under guise of religion, indulgence is sought in acts offensive to law and morality alike, in the disingenuous belief that they are constitutionally protected. There is no immunity, of course, to devotees of such ancient observances as a dionysian symposium or a bacchanalian orgy, even though conducted under a profane pretext of divine worship. "The mischief which the statute was designed to remedy is an important guide in ascertaining its meaning. A thing within the letter of a statute may be unaffected by its provisions, if not within the intention of the makers, and if what was this intention sufficiently appears from the terms which they used, in connection with the conditions calling for such legislation. *Bridgeport* v. *Hubbell,* 5 Conn. 237, 243; *Wetherell* v. *Hollister,* 73 id. 622, 625 . . . ; *Kelley* v. *Killourey,* 81 Conn. 320 . . . ." *National Fireproofing Co.* v. *Huntington,* 81 Conn. 632, 633; *State* v. *Gregory,* 47 Conn. 276, 277. In considering that numerous hypothetical situations presented by the defendants as illustrative of unintended and socially maladroit consequences that might expectedly follow a literal interpretation of the law, we do not do so with a view to ruling in advance on matters not before us. What we have said, in reliance on our firmly founded rules of statutory construction, should make abundantly clear that lack of an expressed exemption does not make the statute all-inclusive and applicable to all activities nonexempt within the letter of the law, if they are not reasonably related to the mischief the law was obviously

intended to correct. "When two constructions are possible, courts will adopt the one which makes the statute effective and workable, and not one which leads to difficult and bizarre results. *Bridgeport* v. *Stratford,* 142 Conn. 634, 644 . . . ." *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331. " 'In construing the legislative language, therefore, we are bound as far as we may to give effect to the legislative intent and advance the remedy manifestly sought to be supplied. To this end, adherence to the strict meaning of words and the precise letter of the language is not required.' *Stapleberg* v. *Stapleberg,* 77 Conn. 31 . . . . In giving such construction 'the application of common sense to the language, is not to be excluded.' *Faulkner* v. *Solazzi,* 79 Conn. 541, 547 . . . ." *Mulcahy* v. *Mulcahy,* 84 Conn. 659, 662.

There is no error.

In this opinion DEARINGTON, J., concurred.

JACOBS, J. (concurring). The defendants in these cases were each charged with a violation of § 30-86 of the General Statutes, which is captioned as follows: "Sales to minors, intoxicated persons and drunkards." The statute makes it unlawful for any permittee, his servant or agent, to sell or deliver alcoholic liquor to certain enumerated classes of protected persons, viz.: minors, intoxicated persons, habitual drunkards, those whose names appear on a list, prepared by the selectmen of a town, who are receiving town aid and are known to use alcoholic liquor, and certain persons whose relatives have requested that sales be not made to them; *"and any person, except the parent or guardian of a minor, who delivers or gives any such liquors to such minor, except on the order of a practicing physician, shall be [punished]"* (italics supplied). A minor is defined

as "any person under twenty-one years of age."
§ 30-1 (12). And a person means any "natural person including partners but shall not include corporations, joint stock companies or other associations of natural persons." § 30-1 (13).

The informations and bills of particulars in each case are identical. They charge the defendants in a single count with the giving and delivery of liquor to minors on or about "6/22/64 & 6/23/64" at the "premises of a private home, in Darien, Connecticut."[2] It is undisputed that neither accused was, at the time of the commission of the alleged offense, a permittee, or the servant or agent of a permittee, within the meaning of the Liquor Control Act. Demurrers, in exactly the same language, were addressed to the informations, as made more specific in the state's bills of particulars, upon the ground that the facts as alleged in each case do not constitute a crime under the statute because the giving or delivery of liquor to minors took place in or about a private home. The demurrers were overruled. The judgment in each case recites that after the demurrer was overruled "[t]he accused refused to plead over, made no plea and was found guilty by the Court." The judge sentenced each accused to pay a fine of $500. The defendants have appealed from the

---

[2] The informations and bills of particulars appear to have been drawn in a cursory manner. They do not spell out the specifics of the offense. See *State* v. *Couture*, 151 Conn. 213, 216; Practice Book § 493 (b). We assume, as did the trial court and the parties, that the substance which the defendants are alleged to have given or delivered to minors is "alcoholic liquor." The informations should have used the words of the statute. For the purpose of this appeal, since the question was not raised in the court below nor pursued here, we construe the word "liquor," as used in the informations and bills of particulars, to mean "alcoholic liquor," more particularly defined in § 30-1 (2). See 48 C.J.S., Intoxicating Liquors, § 8; 30 Am. Jur., Intoxicating Liquors, § 8; 3 Wharton, Criminal Law and Procedure § 1011; *Newton* v. *State ex rel. Attorney General*, 234 Ala. 91; *Pennell* v. *State*, 141 Wis. 35, 38.

judgments, assigning error only in the rulings on the demurrers.

It would appear that the procedure followed in the trial court conforms with our established practice. See *State* v. *Darazzo,* 97 Conn. 728, 731; *State* v. *Tyrrell,* 100 Conn. 101, 103; cf. *State* v. *Nelson,* 126 Conn. 412, 414; *State* v. *Zazzaro,* 128 Conn. 160, 161. In *State* v. *Sul,* 146 Conn. 78, a criminal prosecution for possession of obscene literature, our Supreme Court of Errors said (p. 83) : "Upon the overruling of his demurrer, the defendant could have refused to plead over, let judgment enter, appealed from the judgment and raised the questions of law which he now presents." "[A] demurrer must stand or fall upon the allegations of the pleadings demurred to, which cannot be aided by importing into it facts not therein alleged." *Tomes* v. *Thompson,* 112 Conn. 190, 198. The function of the court on demurrer is to consider the whole record and give judgment for the party who, on the whole, appears to be entitled to it. *White* v. *Avery,* 81 Conn. 325, 328; *Palmer* v. *Des Reis,* 136 Conn. 627, 631. We may properly treat the demurrers in these cases as general ones and sustain them if the informations were insufficient for any cause, though such cause was not mentioned in the specifications. See *State* v. *Gallagher,* 72 Conn. 604, 606; *State* v. *McKee,* 73 Conn. 18, 24; *State* v. *Pape,* 90 Conn. 98, 100; *State* v. *Murphy,* 90 Conn. 662, 664.

We come now to the main points raised by the defendants upon oral argument and in their briefs. They insist that the statute (§ 30-86) was never intended to apply to them but has reference only to permittees, their servants or agents. "In making this contention they invoke the rule of construction known as 'ejusdem generis,' which is that where general words follow an enumeration of persons

or things, by words of particluar and specific meaning, the general words will not be construed in their widest sense, but are to be held as applying only to persons or things of the same general kind or class as those specifically enumerated. . . . The rule of ejusdem generis therefore is to be given a strict application in interpreting such a statute [as this] . . . so that no one can be brought under it 'unless his case comes within its explicit terms, or within the absolutely clear intention of the act, as well as within the spirit of the law and the mischief intended to be remedied.' " *State* v. *Certain Contraceptive Materials,* 126 Conn. 428, 430; see Radin, "Statutory Interpretation," 43 Harv. L. Rev. 863, 874. "Usually the legislative intent is directly contrary to the result obtained by the *ejusdem generis* rule. The legislative intent is to enumerate specific objects or conditions which have come to their attention, but this enumeration is not intended to limit the operation of the statute to specific objects set forth. They provide express examples of the problem; the legislative intent is to regulate *the problem* and not the *enumeration.*" 2 Sutherland, Statutory Construction (3d Ed.) § 4910, p. 401. "To ascertain the meaning of the words of a statute, they must be submitted to the test of all appropriate canons of statutory construction, of which the rule of *ejusdem generis* is one. If, upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that the general words were not used in the restricted sense suggested by the rule, we must give effect to the conclusion afforded by the wider view in order that the will of the legislature shall not fail." *Helvering* v. *Stockholms Enskilda Bank,* 293 U.S. 84, 89.

The subject of a penal law may generally be perceived by ascertaining what mischief or evil the law was designed to remedy or prevent. See *Newton's*

*Appeal,* 84 Conn. 234, 241. And if this be true, there is no difficulty in concluding that the plain and obvious meaning of its language clearly manifests an intention to prohibit or restrain minors from obtaining alcoholic liquors. "The giving of intoxicating liquors to minors may be specifically prohibited." 3 Wharton, Criminal Law & Procedure § 1045. "Sales and gifts of intoxicating liquors to minors are almost universally prohibited. The object in the enactment of such statutes is to prevent intoxicating liquors coming into their possession before they have a full realization of the evil effects arising from their use and to keep them from temptation." 2 Woollen & Thornton, Intoxicating Liquors § 722 (1910). "And we may here remark that if the state has power to prohibit the sale of liquor, it has also power to prohibit the *giving* of liquor by one person to another. The evil to be avoided is the communication from one to another of an article which may be injurious to the recipient . . . ." Black, Intoxicating Liquors § 39 (1892). In our interpretation of § 30-86, we are not warranted, by the plain language of the statute and the objects sought to be accomplished, to confine its operation within narrower limits than those intended by the legislature; any other construction would compel us to reject altogether that portion of the statute we have italicized. Since we have no difficulty in discovering the determinates covered by the statute, the rule of ejusdem generis can have no application.[3] See 50 Am. Jur., Statutes, § 250.

---

[3] In 1937, in *Commonwealth* v. *Randall,* 34 North. Co. Rep. 118 (Pa.), aff'd, 183 Pa. Super. 603, cert. denied on other grounds (see petitioner's brief, Rec. & Briefs, p. 4), 355 U.S. 954, the defendants Randall and Wofsy, both of whom were unlicensed persons, furnished minors with beer, whiskey and vodka at a "drinking party" in Randall's home. They were convicted for a violation of § 493 (1) of the Pennsylvania Liquor Code of 1951, which is strikingly similar to our own statute. They sought to arrest the judgment on the convictions on substantially the same grounds as raised on this appeal. The

The defendants next contend that the caption of the statute supports their view that it is limited in its application to commercial transactions and does not reach noncommercial transfers in a private home. But the prohibition of sales to the enumerated classes is only one of the means by which the chief intention of the legislature was to be accomplished. Employing other means, designed to effect the same purpose, cannot be considered the introduction of another or different subject within the statutory restriction. Looking, then, to all parts of the statute, it is evident that the legislature intended to prohibit the classes of persons named from obtaining alcoholic liquor; sales were but one means provided for effecting the chief design. Very clearly, therefore, those matters which the statute intended to penalize were primarily sales of alcoholic liquor to the prohibited classes; and "clearly the draftsman was striving to condense its provisions into the briefest possible compass." *State* v. *Faro,* 118 Conn. 267, 275. If it were necessary to include in the caption all the details for carrying the law into effect, it would require a caption nearly as long as the law itself. See Endlich, Interpretation of Statutes § 70 (1888); Black, Interpretation of Laws § 78 (1896).

The argument is advanced on behalf of the defendants that the furnishing of liquor to minors in the defendants' home as an act of hospitality does not constitute a violation of the statute.[4] There is noth-

---

court held (p. 127) that the rule of ejusdem generis was inapplicable since it could find no uncertainty in the meaning of the words employed by the legislature: "The intention of the legislature to protect the classes of persons named is the underlying consideration. If we were to restrict this section of the Act to 'licensees' or their 'servants, agents or employees,' we would nullify the very purpose of the Act." See also *State* v. *Sifford,* 51 N.M. 430.

[4] It may not be amiss to point out that the defendants cited and relied upon *People* v. *Bird,* 138 Mich. 31, decided in 1904, noted in 30 Am. Jur. 674, n.5, Intoxicating Liquors, § 240, in support of the

ing in the pleadings which even remotely suggests that the defendants furnished liquor to minors as an act of hospitality. "Ordinarily in passing upon a ruling upon a demurrer the court looks only to it and to the allegations of the pleading demurred to; thus facts cannot be incorporated into the record by stipulation . . . ." Maltbie, Conn. App. Proc., p. 77. We appreciate the fact that the parties desire a determination of this aspect of the case, but the condition of the record forbids our making this determination. See *State* v. *Tyrrell,* 100 Conn. 101, 104.

The claim is also advanced that the state's interpretation of the statute will lead to certain bizarre and absurd results. "With the wisdom or unwisdom of this legislation, this court has, of course, nothing to do. It is our function to interpret the legislative will, not to question its exercise." *Connelly* v. *Bridgeport,* 104 Conn. 238, 249; see *Wallingford* v.

---

claim that the giving of intoxicating liquor to minors as a mere act of hospitality in the home does not constitute an offense. But that case was decided under § 5391 of 2 Compiled Laws of Michigan (1897). Ten years later, in *People* v. *Averill,* 179 Mich. 224, 228, the court said: "It should be remembered that in 1904, in *People* v. *Bird,* . . . this court held that section 5391, 2 Comp. Laws (2 How. Stat. [2d Ed.] § 5067), prohibiting furnishing liquors to minors, has reference only to acts by persons engaged in the business of selling liquor. It would seem that the legislature of 1909, by Act No. 160 [Mich. Comp. Laws §§ 7072, 7073 (1915)], undertook to make it unlawful for 'any person' to sell, furnish, or give to any minor any of the prohibited liquors as a beverage, thus rendering it unlawful for a person not engaged in the liquor business to sell, furnish, or give such liquors to a minor." We consider the *Bird* case of doubtful precedential value. Nor do we think that *Austin* v. *State,* 22 Ind. App. 221, referred to by the defendants, is of aid to them. In that case, the indictment charged a gift to a recipient whom the proof showed to have been thirty-five years of age. The gratuitous supplying of liquor to a minor was not an issue before the court. See *Simons* v. *State,* 25 Ind. 331, 332; cf. *People* v. *Armstrong,* 24 Misc. 2d 53 (N.Y.) (gratuitous supplying of liquor to a minor under eighteen years in the defendant's residence was held not to constitute an offense under Alcoholic Beverage Control Law).

*Neal,* 108 Conn. 152, 158. Moreover, these considerations may be appropriately addressed to the legislature, rather than be regarded as applicable to an unambiguous statute. See *Second National Bank of New Haven* v. *Loftus,* 121 Conn. 454, 459.

Nor is § 30-86 new law in this state. It is true that at the turn of the century, it was unlawful only for licensed persons, their servants or agents to sell or deliver spirituous and intoxicating liquor to any minor, either for his own use or for the use of another person. Rev. 1902, § 2696. In 1909, the act was amended in certain particulars, not relevant here, but the prohibition applied only to licensed persons. Public Acts 1909, c. 196. But in 1913 the statute was drastically enlarged so as to encompass within its terms the following: *"Every person,* except the parent or guardian of a minor, who shall deliver or give any spirituous or intoxicating liquors to such minor, except on the order of a practicing physician, shall be . . . [punished]" (italics supplied). Public Acts 1913, c. 10. Subsequently, the 1902 and 1913 versions were combined into one all-inclusive statute. Rev. 1918, § 2795. By the terms of that statute, it was not only unlawful for licensed persons, their servants or agents to sell or deliver spirituous and intoxicating liquor to a minor; the prohibition was extended so that "every person," with certain specified exceptions, was barred from giving or delivering such liquors to any minor. Since 1918, the act has appeared in substantially the same form. See Cum. Sup. 1933, § 727b,[5] as amended, Cum. Sup. 1935, § 1071c; Rev. 1949, § 4293; General Statutes § 30-86.

---

[5] It is interesting to note that under § 727b of the 1933 Cumulative Supplement it was unlawful to deliver or give alcoholic liquor "to any minor under the age of eighteen." The term "minor" was defined in 1939 to mean any person "under twenty-one years of age." Cum. Sup. 1939, § 947e. It has remained so ever since.

We find no ground upon which the defendants' claim of unconstitutionality of the statute may be successfully maintained. The question is no longer an open one. The hand of the legislature cannot be stayed in the exercise of its inherent police power to prohibit, regulate or restrain the use of intoxicating liquors, provided that this right is exercised in a way which is not in conflict with any superior function of the general government. See *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674; *Pierce* v. *Albanese,* 144 Conn. 241, 247; 48 C.J.S., Intoxicating Liquors, § 33 (a).

The trial court did not err in overruling the demurrers and in adjudging the defendants guilty of a violation of the statute.