******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHARLES L.*
(AC 44690)

Elgo, Cradle and Clark, Js.

*Syllabus*

Pursuant to statute (§ 53-21 (a) (1)), any person who, inter alia, wilfully or unlawfully does any act likely to impair the health or morals of a child under sixteen years old shall be guilty.

Convicted, following a jury trial, of risk of injury to a child pursuant to § 53-21 (a) (1) in connection with his actions in attempting to entice his three year old daughter, J, to ingest cleaning solution, the defendant appealed to this court. Following an angry discussion at a friend's house, the defendant, J, and his wife and J's stepmother, D, returned to their apartment. While the three were standing in the kitchen, the defendant made a remark that implied that no one loved him or J, and he was just going to "take" his life and J's life. He then proceeded to retrieve a cleaning solution from a cabinet and poured it into two cups for himself and J, instructing J to come and drink it. D, who was standing next to J, told her to stay where she was. The defendant then poured the cleaning solution from J's cup into his own and went outside. On appeal to this court, the defendant claimed that the evidence was insufficient for the jury to conclude beyond a reasonable doubt that his actions constituted an act likely to impair the health of a child and that § 53-21 (a) (1) was unconstitutionally vague as applied to the facts of the case. *Held*:

1. There was sufficient evidence presented at trial to convict the defendant pursuant to the act prong of § 53-21 (a) (1): under our Supreme Court's decision in *State* v. *Ares* (345 Conn. 290), a defendant need not touch or have direct physical contact with a child in order to be convicted under the act prong of § 53-21 (a) (1) for engaging in conduct likely to impair the health of a child, and the defendant's attempts to distinguish other cases involving defendants who were convicted for their actions in either directly handing alcohol to a victim or physically pursuing a child with a dangerous weapon were not persuasive, as those cases were instructive in showing that the jury reasonably could have concluded that the defendant's conduct was sufficiently egregious to rise to the level of deliberate, blatant abuse under § 53-21 (a) (1); moreover, the evidence was sufficient for the jury reasonably to conclude that the consumption of a toxic cleaning solution would be injurious to J and that it was likely that J, who was only three years old and standing close to the defendant at the time, would follow her father's instruction to consume the toxic substance, and the fact that, subsequent to the defendant's actions, D ultimately intervened to protect J did not render unreasonable the jury's conclusion that the defendant's conduct was likely to impair J's health.

2. The defendant could not prevail on his claim that § 53-21 (a) (1) was unconstitutionally vague as applied to the facts of the case, as the defendant had sufficient notice that his conduct was prohibited by that statute: the operative information accused the defendant of committing an act likely to impair the health and morals of a child in attempting to entice a three year old minor child to ingest a cup of cleaning solution, and, because prior judicial decisions provided fair warning that § 53-21 (a) (1) prohibited such conduct, the statute was not unconstitutionally vague as applied to the defendant; moreover, this court's decision in *State* v. *March* (39 Conn. App. 267), in which a defendant handed a cup containing rum to a four year old victim who had requested something to drink, made clear that providing a harmful substance to a young child was an act likely to impair the health of that child pursuant to § 53-21 (a) (1); furthermore, cases decided well before the defendant committed the act in question in this case made clear that physical contact with the victim was not necessary for a conviction under the act prong of § 53-21 (a) (1).

Argued October 3, 2022—officially released January 24, 2023

*Procedural History*

Substitute information charging the defendant with four counts of the crime of risk of injury to a child and one count of the crime of cruelty to persons, brought to the Superior Court in the judicial district of Hartford, and tried to the jury before *Graham, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to two counts of risk of injury to a child; verdict and judgment of guilty of one count of risk of injury to child, from which the defendant appealed to this court. *Affirmed.*

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Jonathan M. Sousa*, assistant state's attorney, with whom, on the brief, was *Sharmese L. Walcott*, state's attorney, for the appellee (state).

*Opinion*

CLARK, J. The defendant, Charles L., appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) the evidence was insufficient for the jury to conclude beyond a reasonable doubt that his actions constituted an act likely to impair the health of a child and (2) "§ 53-21 (a) (1) is unconstitutionally vague as applied to the facts of this case . . . ." We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which are either undisputed or reasonably could have been found by the jury, and procedural history are relevant to this appeal. In April, 2014, the defendant had a daughter, J, with his then wife. The defendant's wife died soon thereafter.

In June, 2016, following the death of his wife, the defendant married D. They had a daughter together, L, and the two children resided with them in a two bedroom apartment in Manchester. D's sister, B, and B's daughter also lived with them in the two bedroom apartment.

At some time in September, 2017, the defendant, D, J, L, and B were visiting the defendant's friend, who lived nearby. At one point during that visit, D said that she was ready to leave, and B joked that they were going to leave J with the defendant. In response, the defendant "blew up," said, "f this! You all act like you all love [J]," and then said that no one cared for J. The family then left the friend's house and began walking back to their apartment, and the defendant argued with B as they walked.

After the family returned to their apartment, the defendant went to the kitchen with D and J. Still angry, the defendant stated: "[I]f anybody loved me and [J], then I'm just going to take our lives." He then proceeded to retrieve a generic brand cleaning solution from a cabinet, as well as a cup for himself and a cup that specifically belonged to J, and then poured the cleaning solution into both cups. He instructed J to "come here and drink this . . . ." D was standing next to J and told her to stay where she was, and J obeyed. The defendant then poured the cleaning solution from J's cup into his own and went outside. D left the apartment with J.

In December, 2017, D disclosed this incident to an investigator with the Department of Children and Families (department) while present at a meeting between the investigator and B. The department prepared a report reflecting these allegations and submitted it to the Manchester Police Department. On December 13, 2017, Officer Antony DeJulius spoke with the defendant about the allegations in the report, and the defendant admitted to them, stating that he was angry and "just

reacted." The defendant then became upset and threatened to harm himself, so DeJulius prepared a hospital committal form and brought the defendant to a hospital. In January, 2018, DeJulius obtained written statements from D and B about the September, 2017 incident. DeJulius then obtained an arrest warrant for the defendant. The defendant was arrested on February 8, 2018.

The state charged the defendant with three counts of risk of injury to a child in violation of § 53-21 (a) (1),[1] two counts of threatening in the second degree in violation of General Statutes § 53a-62, and one count of strangulation in the second degree in violation of General Statutes (Rev. to 2017) § 53a-64bb. The state subsequently filed a new short form information that removed the threatening and strangulation counts, added a fourth risk of injury count, and added a count charging the defendant with cruelty to persons in violation of General Statutes § 53-20 (b) (1). On April 11, 2018, the defendant pleaded not guilty to all charges and requested a jury trial.

Prior to trial, on January 14, 2020, the state filed a five count long form information, setting forth specific accusations supporting the crimes charged.[2] On January 22, 2020, the defendant's trial commenced. After the state rested its case, the defendant moved for a judgment of acquittal pursuant to Practice Book §§ 42-40 and 42-41 on counts one, two, and four, which charged the defendant with risk of injury, and count five, which charged the defendant with cruelty to persons. The trial court granted the motion as to counts two and four but denied it as to counts one and five.

On January 23, 2020, the state amended its long form information, removing the two counts of which the defendant had been acquitted and renumbering the counts so that count three, which charged the defendant with risk of injury, and count five, which charged the defendant with cruelty to persons, were now labeled counts two and three, respectively. After the close of evidence, the court instructed the jury as to the remaining three counts, and the jury returned a verdict of guilty as to count one and not guilty as to counts two and three. On March 9, 2021, the court, *Graham, J.*, sentenced the defendant to a term of imprisonment of ten years, execution suspended after five years, and five years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The defendant claims that there was insufficient evidence to convict him of risk of injury to a child pursuant to the act prong of § 53-21 (a) (1). Specifically, he argues that the state "did not present evidence that [he] committed an act of blatant physical abuse or engaged in conduct directly perpetrated on J," as he contends is

required by *State* v. *Schriver*, 207 Conn. 456, 466–67, 542 A.2d 686 (1988). To that end, he argues that "[t]here is no evidence that the defendant ever approached J, nonetheless physically touched or committed blatant physical abuse upon her . . . ." (Citation omitted.) He further argues that the state presented insufficient evidence to prove that the defendant's "act" was "likely" to be injurious to J's health. For the reasons discussed herein, we disagree with the defendant.

We begin our analysis by setting forth the well established legal principles for assessing an insufficiency of the evidence claim. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Petersen*, 196 Conn. App. 646, 655, 230 A.3d 696, cert. denied, 335 Conn. 921, 232 A.3d 1104 (2020). "In particular, before this court may overturn a jury verdict for insufficient evidence, it must conclude that no reasonable jury could arrive at the conclusion the jury did. . . . Although the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense . . . each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Rhodes*, 335 Conn. 226, 233, 249 A.3d 683 (2020).

The defendant argues that the evidence was insufficient to support his conviction because there was no evidence that he engaged in "blatant physical abuse." Specifically, he claims that, in order to be convicted under the act prong of § 53-21 (a) (1) for conduct likely to impair the health of a child, there must be evidence that the defendant physically touched the child. He further argues that, even if the statute does not require a defendant to physically touch a child, his conduct was not sufficiently egregious for the jury to have concluded that he engaged in "blatant physical abuse" of a child.

We begin our discussion with a brief overview of § 53-21 (a) (1). Section 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, *or does any act likely to impair the health or morals of any such child* . . . shall be guilty of . . . a class C felony . . . ." (Emphasis added.) Our courts "have [long] recognized that subdivision (1) of

§ 53-21 [now § 53-21 (a) (1)] prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare . . . and (2) acts directly perpetrated on the person of the [child] and injurious to his [or her] moral or physical well-being. . . . Cases construing § 53-21 have emphasized this clear separation between the two parts of the statute . . . ." (Citation omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Robert H.*, 273 Conn. 56, 65, 866 A.2d 1255 (2005).

Since its passage, a judicial gloss has been imposed on § 53-21. Pertinent to the issues raised in this appeal, our Supreme Court in *State* v. *Schriver*, supra, 207 Conn. 461, distinguished between acts likely to impair the "morals" of a child and acts likely to impair the "health" of a child. It stated that an act likely to impair the morals of a child involves "deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner . . . ." (Internal quotation marks omitted.) Id., 463. The court found that the defendant had not engaged in such conduct and, thus, "had no reasonable opportunity to know that his conduct was prohibited by the impairment of morals clause of § 53-21." Id., 466. As for acts likely to impair the health of a child, the court found that prior cases had "provide[d] an authoritative judicial gloss that limits the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse"; id.; and concluded that "the irreducible minimum of any prosecution under the [act prong] of § 53-21 is an act directly perpetrated on the person of a minor." Id., 467.

Following oral arguments in the present appeal, our Supreme Court decided *State* v. *Ares*, 345 Conn. 290, 284 A.3d 967 (2022). In *Ares*, the defendant, using a book of matches, set fire to a mattress on the front porch of the first floor of a three-family residence where he lived after an argument with his stepfather. Id., 293. By the time police arrived at the scene, "all three stories of the building were already engulfed in flames . . . ." Id., 294. "All twelve occupants who were at the scene at the time of the incident were evacuated from the building," including "the four minor children who were inside of the building's second floor apartment." Id. None of the children were injured. Id.

The defendant was subsequently charged and convicted of various crimes, including four counts of risk of injury to a child in violation of § 53-21 (a) (1). Id., 295. On appeal before our Supreme Court, he argued that the evidence against him was insufficient to convict him under the act prong of § 53-21 (a) (1). Id., 296. Specifically, he argued "that, because the evidence introduced at trial demonstrated only that he lit fire to a mattress on the building's front porch, the state [could not] establish that he ever took any act directly on the

person of a minor." Id., 300–301. Our Supreme Court stated that "[t]he fact that the defendant's actions were motivated by his fight with the occupants on the first floor, rather than being specifically directed at the four children themselves, is not categorically dispositive . . . ." Id., 301–302. The court further stated that "[t]he fact that the children escaped from the building without being harmed by the resulting flames or smoke is, likewise, not dispositive [because] proof of actual injury is not required." Id., 302. The court concluded that "[a] reasonable finder of fact could have concluded, on the basis of the totality of the circumstances present [on that] particular record, that such conduct was sufficiently egregious to rise to the level of blatant abuse." Id., 303. The court reasoned that, "[a]lthough the initial distance between the four children and the fire's origin, together with their eventual escape from the structure, may well have been relevant to the question of whether such physical injuries were sufficiently probable to warrant conviction, ample evidence about the speed of the blaze—together with the intensity of both the heat and smoke it produced—undisputedly supports the trial court's factual finding in that regard." Id. It therefore rejected the defendant's claim of evidentiary insufficiency. Id.

In *Ares*, the court observed that, "[o]ver the decades following *Schriver*, two particularly relevant legal principles have embedded themselves in our state's risk of injury jurisprudence. The first is that the state need not prove specific intent in order to establish a violation under either the situation or act prong. See, e.g., *State v. Maurice M.*, 303 Conn. 18, 28, 31 A.3d 1063 (2011) (specific intent is not required to establish violation of situation prong); *State v. March*, 39 Conn. App. 267, 274–75, 664 A.2d 1157 (specific intent is not required to establish violation of act prong), cert. denied, 235 Conn. 930, 667 A.2d 801 (1995). Evidence sufficient to support a finding of general intent will suffice. See, e.g., *State v. McClary*, [207 Conn. 233, 240, 541 A.2d 96 (1988)]; *State v. Euclides L.*, 189 Conn. App. 151, 161–62, 207 A.3d 93 (2019).

"The second well established legal principle is that the state need not prove actual injury in order to secure a conviction under either the situation prong or the act prong of § 53-21 (a) (1). See, e.g., *State v. Burton*, 258 Conn. 153, 161, 778 A.2d 955 (2001) ('[Section] 53-21 does not require a finding that the victim's [health or] morals were actually impaired. On the contrary, § 53-21 provides [in relevant part] that anyone "who . . . wilfully or unlawfully . . . does any act *likely to impair* the health or morals of any such child" may be found guilty.' (Emphasis added.)); see also *State v. Gewily*, 280 Conn. 660, 669, 911 A.2d 293 (2006); *State v. Padua*, [273 Conn. 138, 148, 869 A.2d 192 (2005)]; *State v. Samms*, 139 Conn. App. 553, 559, 56 A.3d 755 (2012), cert. denied, 308 Conn. 902, 60 A.3d 287 (2013).

Although *Schriver* requires that the defendant commit an act of 'deliberate, blatant abuse'; *State* v. *Schriver*, supra, 207 Conn. 466; it does not require that the defendant cause an actual injury. *It remains possible for a defendant's conduct to be sufficiently egregious in nature that it rises to the level of deliberate, blatant abuse, even in the absence of a defendant's direct physical contact with a child.* See, e.g., *State* v. *Owens*, 100 Conn. App. 619, 622–23, 638, 918 A.2d 1041 (concluding that 'the mere fact that the defendant did not physically touch [the child] while pursuing her should not relieve him of criminal liability under the act prong' when defendant chased child with knife after stabbing child's mother), cert. denied, 282 Conn. 927, 926 A.2d 668 (2007). Although proof of physical contact has been required to sustain a conviction under the act prong of § 53-21 in certain other contexts; see *State* v. *Pickering*, [180 Conn. 54, 64, 428 A.2d 322 (1980)] (statutory proscription of acts likely to impair morals of children required 'deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner'); neither the statute's plain text nor the case law applying it requires proof of such contact in all cases." (Emphasis added.) *State* v. *Ares*, supra, 345 Conn. 299–300.

Our Supreme Court's decision in *Ares* makes clear that a defendant need not touch or have "direct physical contact with" a child in order to be convicted under the act prong of § 53-21 (a) (1) for engaging in conduct likely to impair the *health* of a child. Id., 300. We therefore reject the defendant's contention that evidence of physical contact with J was required to sustain his conviction.

The defendant nevertheless contends that, even if § 53-21 (a) (1) does not require a defendant to physically touch a child, there was insufficient evidence for the jury to conclude that his conduct constituted " 'deliberate, blatant abuse' " for purposes of the statute. In support of that claim, he cites to a number of cases in which a defendant was convicted for conduct that he argues was more egregious in nature insofar as the defendants in those cases either directly handed alcohol to a victim; *State* v. *Hector M.*, 148 Conn. App. 378, 392, 85 A.3d 1188, cert. denied, 311 Conn. 936, 88 A.3d 550 (2014); *State* v. *March*, supra, 39 Conn. App. 276; or physically pursued a child with a dangerous weapon. *State* v. *Owens*, supra, 100 Conn. App. 622–23. We are not persuaded. Although the defendant attempts to distinguish those cases from the facts of this case, we find those cases instructive.

In *Owens*, which our Supreme Court cited to approvingly in *Ares*; see *State* v. *Ares*, supra, 345 Conn. 300; the defendant stabbed a woman, and, when the woman's child entered the room and told the defendant to leave her mother alone, he told the child to "get the

fuck out of here" and ran two or three steps toward her with the knife, chasing the child out of the room. *State* v. *Owens*, supra, 100 Conn. App. 622–23. This court upheld the defendant's conviction under § 53-21 (a) (1) for committing an act likely to impair the health of a child, concluding that "the mere fact that the defendant did not physically touch [the child] while pursuing her should not relieve him of criminal liability under the act prong of § 53-21 (a) (1)." Id., 638. This court reasoned that, "[i]f we were to hold otherwise and adopt the defendant's arguments that a physical touching is required to convict the defendant, it would make the language of § 53-21 (a) (1) meaningless and frustrate its purpose. For example, pursuant to the defendant's interpretation, if one threw a knife at a victim or attempted to stab a victim while in pursuit, his or her culpability would depend on the accuracy of his or her arm or on his or her speed in relation to that of the intended victim. Such an interpretation of § 53-21 (a) (1) would render the statute an absurdity." Id., 638–39.

In *Hector M.*, the defendant was convicted of risk of injury to a child after providing alcohol to his daughter. *State* v. *Hector M.*, supra, 148 Conn. App. 388. The evidence revealed that the daughter had only "a couple of sips" of the alcoholic beverage before she decided not to continue drinking. (Internal quotation marks omitted.) Id., 383. The defendant argued that the state failed to prove that he violated § 53-21 because his daughter did not drink enough to become intoxicated. Id., 390. In rejecting the defendant's argument, this court reasoned that, "[p]ursuant to the defendant's interpretation, one's culpability would depend on whether a child under the age of sixteen was actually intoxicated or impaired in order for a defendant to be found in violation of the statute." Id., 390–91. We explained that "[s]uch a view is at odds with the stated purpose of § 53-21 (a) (1), which is to protect the health and morals of children." Id., 391. Citing *Owens*, we stated that the defendant's argument "also fail[ed] to provide a proper focus on the behavior of the defendant, as our precedent requires." Id. In concluding that the evidence was sufficient to support his conviction, this court reasoned that "[t]he fact that [the daughter] had only a few sips of the alcohol is irrelevant because she decided, on her own, not to continue drinking. Allowing a defendant to circumvent a charge of risk of injury to a child when the [child] chooses not to drink would render § 53-21 an absurdity." Id., 391–92. We observed that the facts of that case were "akin to *State* v. *March*, [supra] 39 Conn. App. 267 . . . where a defendant was convicted of risk of injury to a child for giving a four year old a cup containing rum and soda" and "the child was not impaired after drinking the alcohol." *State* v. *Hector M.*, supra, 392. We emphasized in *Hector M.* that "[t]here is no requirement . . . that the state prove an actual injury to the child. Rather, courts are required to focus

on the acts committed by the defendant in order to determine whether those acts were likely to endanger the life of the child." Id.

With this as our backdrop, and on the basis of our review of the evidence presented at trial, we conclude that the jury reasonably could have concluded that the defendant's conduct was sufficiently egregious to rise to the level of deliberate, blatant abuse. D and B testified that the defendant, who was visibly angry, stated that he intended to take his and J's lives[3] and then retrieved J's cup and a cup for himself. The jury also heard testimony that, after pouring the cleaning solution into the cups, the defendant told J, his three year old daughter who stood nearby, to come to him and drink it. D further testified that, to the best of her knowledge, the cleaning solution that the defendant poured into the cup was poisonous and would be harmful if ingested and that the defendant was sincere in his efforts to entice J to drink the cleaning solution. Although there was no direct physical contact with J, this evidence, and the reasonable inferences that the jury could have drawn from it, was sufficient for the jury reasonably to conclude that the defendant violated the act prong of § 53-21 (a) (1) through acts that constituted deliberate, blatant abuse.

Our discussion does not end there, however. The defendant also argues that the evidence was insufficient to support a finding that his actions were "likely" to impair J's health because D was present throughout the incident and prevented J from ingesting the cleaning solution. We are not persuaded.

Construing the evidence in the record in a light most favorable to sustaining the verdict, as we must when considering evidentiary sufficiency; see *State* v. *Petersen*, supra, 196 Conn. App. 655; we conclude that the evidence was sufficient for the jury reasonably to conclude that the consumption of a toxic cleaning solution would be injurious to J and that it was likely that J, who was only three years old and standing close to the defendant at the time, would follow her father's instruction to consume the toxic substance. See *State* v. *Owens*, supra, 100 Conn. App. 639–40 (reviewing meaning of "likely"). The fact that, subsequent to the defendant's actions, D ultimately intervened to protect J does not render unreasonable the jury's conclusion that the defendant's conduct was likely to impair J's health. See *State* v. *Ares*, supra, 345 Conn. 302 (evidence was sufficient to support conviction despite adult intervening and safely removing children from building before fire spread). We reiterate that "[t]here is no requirement . . . that the state prove an actual injury to the child. Rather, courts are required to focus on the acts *committed by the defendant* in order to determine whether those acts were likely to endanger the life of the child." (Emphasis added.) *State* v. *Hector M.*, supra,

148 Conn. App. 392. Accordingly, we conclude that the jury heard sufficient evidence that, if credited, would support its finding that the defendant's act of enticing J to drink cleaning solution was likely to impair J's health.

II

The defendant also claims that his conviction violates due process because § 53-21 (a) (1) is unconstitutionally vague as applied to the facts of this case.[4] Specifically, the defendant argues that there was inadequate notice that § 53-21 (a) (1) prohibited the conduct here because the defendant never physically touched J. We disagree.

"The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. . . . In undertaking such review, we are mindful that [a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . .

"[T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness [because] [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Internal quotation marks omitted.) *State* v. *Lori T.*, 345 Conn. 44, 54, 282 A.3d 1233 (2022). Moreover, "[a] facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards." (Internal quotation marks omitted.) *State* v. *Robert H.*, supra, 273 Conn. 67; see also *State* v. *Scruggs*, 279 Conn. 698, 710, 905 A.2d 24 (2006) ("[r]eferences to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning" (internal quotation marks omitted)).

Count one of the operative long form information accused the defendant of "committ[ing] an act likely to impair the health and morals of [a] child, to wit: attempting to entice a three year old minor child to ingest a cup of cleaning solution . . . ." (Citation omitted.) Because prior judicial decisions provided fair warning that § 53-21 (a) (1) prohibited such conduct, we conclude that the statute is not unconstitutionally vague as applied to the defendant.

Our decision in *March* is particularly instructive. In that case, we affirmed a § 53-21 (a) conviction based

on a defendant "hand[ing] a cup containing rum to the four year old victim who had requested something to drink." *State* v. *March*, supra, 39 Conn. App. 276. The defendant argued that this conduct was insufficient to support a conviction under the act prong of § 53-21 (a) (1) and, instead, was only prohibited under the situation prong. Id. We disagreed, concluding that, "due to the age of the victim, this [was] an act directly perpetrated upon a child that [was] likely to impair the health or morals of the child." (Footnote omitted.) Id. With that decision, we made clear that providing a harmful substance to a young child is an act likely to impair the health of that child pursuant to § 53-21 (a) (1). See id.; see also *State* v. *Hector M.*, supra, 148 Conn. App. 391–92 (providing alcohol to fourteen year old who took only few sips was act likely to impair child's health); *State* v. *Ritrovato*, 85 Conn. App. 575, 588–90, 858 A.2d 296 (2004) (providing LSD to fifteen year old was act likely to impair child's health), rev'd on other grounds, 280 Conn. 36, 905 A.2d 1079 (2006).

Furthermore, although the defendant argues that he was not sufficiently on notice that his conduct was prohibited by the statute because he did not physically touch the victim, as described in part I of this opinion, cases decided well before the defendant committed the criminal act in question in this case made clear that no such contact was necessary for a conviction under the act prong of § 53-21 (a) (1). See, e.g., *State* v. *Owens*, supra, 100 Conn. App. 638; *State* v. *March*, supra, 39 Conn. App. 276. Although the defendant takes issue with this court's reasoning in *Owens*, he cannot claim that the decision did not put him on notice that his conduct violated § 53-21 (a) (1). Moreover, as noted earlier in this opinion, our Supreme Court has since cited *Owens* approvingly for the proposition that a defendant may be convicted under the statute even in the absence of physical contact with the victim. *State* v. *Ares*, supra, 345 Conn. 300.

Accordingly, because the defendant had sufficient notice that his conduct was prohibited by § 53-21 (a) (1), the statute is not unconstitutionally vague as applied to him.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of (A) a class C felony . . . ."

[2] The five charges arose from separate incidents that were alleged to have occurred "in or around August—November, 2017 . . . ." Count one accused the defendant of committing "an act likely to impair the health and morals

of any such child, to wit: attempting to entice a three year old minor child to ingest a cup of cleaning solution . . . .” Count two accused the defendant of committing “an act likely to impair the health and morals of any such child, to wit: physically and verbally threatening to drown a three year old minor child . . . .” Count three accused the defendant of committing “an act likely to impair the health and morals of any such child, to wit: restricting a three year old minor child’s airway as a form of punishment . . . .” Count four accused the defendant of committing “an act likely to impair the health and morals of any such child, to wit: threatening a three year old minor child with a knife . . . .” And count five, cruelty to persons, accused him of having “control and custody of a child under the age of nineteen years, to wit: a three year old minor child, and intentionally maltreated such child . . . .”

[3] We note again that, in prosecutions pursuant to § 53-21 (a) (1), “the state need not prove specific intent in order to establish a violation under either the situation or act prong. . . . Evidence sufficient to support a finding of general intent will suffice.” (Citations omitted.) *State* v. *Ares*, supra, 345 Conn. 299.

[4] The defendant did not raise this issue at trial but argues that it is nonetheless reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). *Golding* allows review when “(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.” (Footnote omitted.) Id., 239–40; see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*). The state does not challenge the reviewability of the vagueness claim under *Golding*. Because the record is adequate for review and the claim is of constitutional magnitude, we will review the void for vagueness claim under *Golding* “to determine whether a constitutional violation . . . existed and, if so, whether it caused harm to the defendant.” *State* v. *Ortiz*, 83 Conn. App. 142, 157, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004).